UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T-MOBILE USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL MONTIJO, et al., <br><br> Defendants. | CASE NO. C12-1317RSM <br><br> ORDER ON DEFENDANTS' MOTION TO DISMISS AND COMPEL ARBITRATION OR STAY PENDING ARBITRATION |

## I. INTRODUCTION

This matter comes before the Court pursuant to Defendants' Fed. R. Civ. P. 12(b)(1), 12(b)(3) and 12(b)(6) motions to dismiss and compel arbitration, or stay the case pending arbitration. Dkt. # 9. For the reasons set forth below, Defendants' motion to dismiss is DENIED and the motion to stay is GRANTED.

## II. BACKGROUND

In March 2009 and April 2010, plaintiff T-Mobile USA, Inc. ("T-Mobile") entered into Limited Exclusive and Exclusive Retailer Agreements ("Dealer Agreements") with Wireless Now, Inc. ("Wireless Now") and Mobile South, LLC ("Mobile South") respectively. In addition, T-Mobile and Wireless Now entered into a Cross-Corporate Guaranty, under which Wireless

1  Now guaranteed payment of any and all debts owed by Mobile South. Michael Montijo and
2  David Moored (collectively "Defendants") are the co-owners of Wireless Now and Mobile
3  South. In September 2010 and March 2011, the Defendants each executed a Personal Guaranty,
4  under which they guaranteed payment of Mobile South and Wireless Now's debts respectively.

5  In May 2011, Wireless Now filed for bankruptcy in the Northern District of Illinois and
6  filed adversary complaints against T-Mobile alleging that no debts are actually owed due to fraud
7  and antitrust violations among other things. T-Mobile successfully moved the matter to
8  arbitration in Seattle pursuant to the arbitration provision contained in the Dealer Agreement.
9  Consequently, Wireless Now filed an arbitration demand and Mobile South joined in to establish
10 what liabilities, if any, are owed to T-Mobile under the Dealer Agreements. The arbitration
11 proceeding is now pending and scheduled for hearing in March 2013.

12 T-Mobile filed the instant action against Defendants alleging breach of the Personal
13 Guaranties due to nonpayment of debts incurred by Wireless Now and Mobile South. The
14 guaranties provide that the parties mutually consent to the jurisdiction of any state or federal
15 court sitting in King County, Washington and that T-Mobile's right to collect from the
16 Defendants is not to be affected by any pending claims brought under the Dealer Agreements.
17 T-Mobile argues that since the parties agreed to these express terms, the guaranties must be
18 construed as entirely separate contracts from the Dealer Agreements, which are enforceable in
19 this Court. Defendants argue that the determination of liability under the Personal Guaranties
20 necessarily hinges on the arbitration outcome of the Dealer Agreements. As such, they argue the
21 Court must exercise equitable estoppel and compel arbitration of T-Mobile's claims, or in the
22 alternative stay the case pending the outcome of arbitration.

23
24

## III. DISCUSSION

**A. Equitable Estoppel**

As a general rule, nonsignatories to an agreement are not bound by arbitration clauses. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Courts, however, have recognized limited exceptions to this rule including the principle of equitable estoppel. "Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006) (quoting *Wash. Mut. Fin. Group, L.L.C. v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004). Under narrow circumstances, a third party nonsignatory to an agreement containing an arbitration clause may require a signatory of that agreement to arbitrate. This occurs if the issues of the claim and underlying agreement are "intertwined" and the nonsignatory has a "close relationship" with one of the entities involved. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009); *see also Double D Trade Co. v. Lamex Foods, Inc.*, No. 09-0919, 2009 WL 4927800, at *6, n. 5 (W.D. Wash. Dec. 14, 2009). According to *Mundi*, the equitable estoppel test applies where a defendant who is a nonsignatory to an agreement providing for arbitration seeks to compel arbitration of separate claims brought by a plaintiff who is a signatory to that agreement. *See Soto v. Am. Honda Motor Co.*, No. 12-1377, 2012 WL 4746969, at *3 (N.D. Cal. Nov. 20, 2012); *Allianz Global Risk U.S. Ins. Co. v. Gen. Electric Co.*, No. 09-9033, 2010 WL 749876, at *2-3 (C.D. Cal. Mar. 1, 2010); *ValueSelling Associates, L.L.C. v. Temple*, No. 09-1493, 2009 WL 3736264, at *6-7 (S.D. Cal. Nov. 5, 2009).

Here, Defendants are nonsignatories to the Dealer Agreements that are pending arbitration. T-Mobile, a signatory to that agreement, brought separate claims arising from Defendants' Personal Guaranties to this court. On the basis of equitable estoppel, the

nonsignatory Defendants seek to dismiss and compel arbitration because T-Mobile's claim on the Personal Guaranties is "intertwined" with the Dealer Agreements. Given the factual circumstances outlined in *Mundi*, equitable estoppel analysis is proper.

Due to the limited application of estoppel in this context, this Court has yet to apply the doctrine to compel arbitration. *See, e.g.*, *Rajagopalan v. Noteworld, L.L.C.*, No. 11-5574, 2012 WL 727075, at *6 (W.D. Wash. Mar. 6, 2012) (citing *Mundi*, the court declined to extend equitable estoppel to a nonsignatory defendant who was expressly listed as an "independent third party" in the signatory plaintiff's agreement containing the arbitration clause), *Double D Trade*, 2009 WL 4927899 at *6, n. 5 (citing *Mundi*, the court acknowledged that equitable estoppel may be used by nonsignatories to enforce arbitration of a signatory, but the court declined to compel arbitration on estoppel grounds because the facts did not apply in that case).

Ninth Circuit district courts have established a two-prong standard for a nonsignatory defendant to compel arbitration of signatory plaintiff's claim: (1) the subject matter of the dispute must be "intertwined with the contract providing for arbitration"; and (2) there must be a "close relationship" between a signatory party and the nonsignatory party seeking to compel arbitration. *In re Apple & AT & TM Antitrust Litig.*, 826 F.Supp.2d, 1168, 1176-78 (N.D. Cal. 2011) (citing *Mundi*, 555 F.3d at 1046, where the court examined and adopted the Second Circuit's standard set out in *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359-62 (2d Cir. 2008)). Moreover, the estoppel inquiry is fact-specific. *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 178 (2d Cir. 2004).

Under the first prong, "claims are intertwined where the merits of an issue between the parties is bound up with a contract binding one party and containing an arbitration clause." *Bimota SPA v. Rousseau*, 628 F.Supp.2d 500, 504 (S.D.N.Y. 2009); *see Hawkins v. KPMG*

*L.L.P.*, 423 F.Supp.2d 1038, 1050 (N.D. Cal. 2006). In the Second Circuit, the court reasoned that to allow a nonsignatory to compel a signatory to arbitrate based on estoppel, it was "essential…that the subject matter of the dispute was intertwined with the contract providing for arbitration." *Sokol Holdings*, 542 F.3d at 361; *see also Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999) (holding that a signatory is estopped from avoiding arbitration with a nonsignatory "when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed"). It is not enough to show that but-for the underlying agreement, the signatory plaintiff would have no claim. The claim must be "substantially interrelated" with the underlying conduct. *Bultemeyer v. Systems & Services Technologies, Inc.*, No. 12-0998, 2012 WL 4458138, at *4 (D. Ariz. Sep. 26, 2012) (citing *Mundi*, the court rejected a nonsignatory defendant's argument that but-for the breach of the underlying contract, defendant would have no claim. Defendant's role was simply a third-party debt collector in the underlying contract with the signatory plaintiff, which was an insufficient link to show that the subject matter of the debt collection claim was intertwined with the terms of the contract); *cf. Lucas v. Hertz Corp.*, No. 11-1581, 2012 WL 2367617, at *7 (N.D. Cal. June 21, 2012) (granting a nonsignatory defendant's motion to compel arbitration of plaintiff's claims because all of the claims rested on the terms of the underlying contract).

Here, the subject matter of the Personal Guaranties is the Defendants' respective obligations to pay T-Mobile the debts incurred by their companies, Wireless Now and Mobile South. These obligations were stipulated pursuant to the arrangement made between T-Mobile and the companies through the Dealer Agreements. T-Mobile's claim for breach on the guaranties stems directly from the facts surrounding the parties' obligations under the Dealer

Agreements. Further, the arbitration proceeding is set to resolve allegations of fraud and antitrust violations against T-Mobile in respect to the Dealer Agreements. The determination of any liabilities there directly impacts whether the Defendants owe any liabilities on the Personal Guaranties. As such, T-Mobile's claim is fundamentally "intertwined" with the Dealer Agreements, and the first requirement is satisfied.

Under the second prong, there must be "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Sokol Holdings*, 542 F.3d at 359. Courts have permitted nonsignatories to compel arbitration in cases where they "have tended to share a common feature in that the nonsignatory party asserting estoppel has had some sort of corporate relationship to a signatory party." *Just Film, Inc. v. Merch. Services, Inc.*, No. 10-1993, 2011 WL 3809908, at *5 (N.D. Cal. Aug. 29, 2011) (citing *Ross v. Am. Exp. Co.*, 547 F.3d 137, 144 (2d Cir. 2008)). These cases were those "involving subsidiaries, affiliates, agents, and other related business entities." *Id.; see also Bimota SPA*, 628 F.Supp.2d at 504-05 (holding that the nonsignatory defendants being President, CEO and controlling shareholders of the signatory company satisfied the "close relationship" requirement of the estoppel test).

Here, the Defendants are co-owners of Wireless Now and Mobile South, making them officers of the signatory companies. The Personal Guaranties were executed in their official capacities as officers for the sole purpose of assuming the company debts underlying the Dealer Agreements. Defendants are not merely third party beneficiaries, but are directly affected by the "close relationship" with the signatory companies. To deprive Defendants' right to arbitrate the

issues of fraud, antitrust and corporate liability before ruling on the issue of personal liability would be contrary to sound judicial policy.

T-Mobile nonetheless argues that under the Federal Arbitration Act ("FAA"), arbitration is a matter of contract, and the court cannot require a party to arbitrate a dispute unless the party has agreed to do so. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). T-Mobile relies on the fact that the parties have expressly agreed to enforce T-Mobile's right to claim on the Personal Guaranties without arbitration, despite any pending action on the Dealer Agreements. The relevant provision states:

> "This Guaranty is an original and independent obligation of Guarantor, separate and distinct from Dealer's obligations under the Dealer Agreement(s), and T-Mobile may join Guarantor in any action against Dealer on the guaranteed obligations, or may bring a separate action against Guarantor or Dealer. This Guaranty constitutes a guaranty of payment, not of collection, and the obligations of Guarantor hereunder are direct and primary, regardless of the validity of enforceability of the Dealer Agreement(s)…" Dkt. # 12.

As such, T-Mobile argues that the Personal Guaranties are a separate agreement outside the scope of the Dealer Agreements and should be treated as a separate contract altogether.

In the context of equitable estoppel, however, district courts have found that such guaranties relate to the same "subject matter of the underlying agreement" and are just another indication of the close relationship between the nonsignatory defendants and the signatory entity. *Bimota SPA*, 628 F.Supp.2d at 505 (quoting *Chase Mortg. Co.-W. v. Bankers Trust Co.*, No. 00-8150, 2001 WL 547224, at *2 (S.D.N.Y. May 23, 2001), the court held that while the personal guaranty signed by a nonsignatory defendant was outside the scope of the underlying agreement, the pending arbitration proceeding was the appropriate forum for the matter under equitable estoppel). Similarly here, the Personal Guaranties are written as "separate" agreements, but the clear purpose is for Defendants to guaranty payment of Wireless Now and Mobile South's

obligations pursuant to the Dealer Agreement. As the court is not aware of any other liabilities the Defendants owe T-Mobile, the finding of liability under the Personal Guaranties is necessarily dependent on the finding of liability in the Dealer Agreements.

Courts also look to the arbitration provision in the underlying agreement to determine the scope of arbitrability. *See, e.g.*, *Thyssen, Inc. v. M/V Markos N*, No. 97-6181, 1999 WL 619634, at *4-5 (S.D.N.Y. Aug. 16, 1999) (finding that a broad arbitration clause in an underlying agreement covers even a dispute involving a nonsignatory, whereas a narrow arbitration clause applies only to disputes between the particular parties identified in the clause). Here, the Dealer Agreements contain a broad arbitration provision, allowing for the parties to arbitrate any disputes arising within the scope of the agreement. The relevant provision states:

> "Any Claims or controversies, regardless of the theory under which they arise, including without limitation contract, tort, common law, statutory, or regulatory duties or any other liability arising out of or relating to this Agreement ("Claim") shall be resolved by submission to binding arbitration." Dkt. # 10-10, 10-11.

The provision contains no language that limits Defendants' role as a third party nonsignatory. Moreover, T-Mobile is the party that initiated the arbitration proceeding with the companies, so it has implicitly acknowledged the validity of the arbitration clause contained in the Dealer Agreements. *See Bimota SPA*, 628 F.Supp.2d at 506. In the pending arbitration, T-Mobile is seeking to resolve claims based on facts that are "inherently inseparable" from the subject matter of the instant action. *See Fujian Pac. Electric Co. v. Bechtel Power Corp.*, No. 04-3126, 2004 WL 2645974, at *6 (N.D. Cal. Nov. 19, 2004) (applying equitable estoppel, the court granted defendant's motion to stay a corporate guaranty claim pending arbitration of a related dispute). If the court were to proceed as T-Mobile suggests, "the arbitration proceedings between the…signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)

(quoting *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976). Accordingly, equitable estoppel is proper here.

**B.  Motion to Dismiss and Compel Arbitration or Stay Pending Arbitration**

The only remaining issue is whether the Court should dismiss and compel arbitration of T-Mobile's claims or stay the case pending the outcome of arbitration on the Dealer Agreements. Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3) and 12(b)(6).  On the issues of subject matter jurisdiction and venue, the motions are inapposite here, because this Court has diversity jurisdiction over T-Mobile's claims pursuant to the express terms in the Personal Guaranties.  Next, a motion to dismiss for failure to state a claim will be denied unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), *Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  T-Mobile's complaint alleges Defendants breached the Personal Guaranties by not paying debt obligations owed in connection with Wireless Now and Mobile South's Dealer Agreements.  If corporate liability under the Dealer Agreements is established, T-Mobile may have a legitimate claim for damages under the guaranties.  Thus, Defendants' Rule 12(b)(1), 12(b)(3) and 12(b)(6) motions are denied.

While the Defendants' motions are inapplicable here, the decision to dismiss and compel arbitration or stay pending arbitration is based on equitable grounds.  It is exercised in order to avoid inefficient, duplicate litigation.  *Garcia v. Stonehenge, Ltd.*, No. 97-4368, 1998 WL 118177, at *5 (N.D. Cal. Mar. 2, 1998).  When equitable estoppel is exercised, the court has considerable discretion in granting either form of relief.  *Amisil Holdings, Ltd. v. Clarium Capital Mgmt.*, 622 F.Supp.2d 825, 841 (N.D. Cal. 2007); *Fujian*, 2004 WL 2645974 at *7. Nonetheless in exercising this discretion, the court must take into account the intent of the parties as expressed in the various contracts at issue.  *Accord WorldCrisa Corp. v. Armstrong*, 129 F.3d

1   71, 74 (2d Cir. 1997) (citing *Collins & Aikman Products Co. v. Bldg. Systems, Inc.* 58 F.3d 16,

2   19 (2d Cir. 1995)) ("Arbitration is essentially contractual, . . . and the parties may not be forced

3   into arbitration if that was not their true agreement"). To compel arbitration, it must be

4   foreseeable that T-Mobile is subject to arbitration with Defendants on this matter and that no

5   prejudice results to either party. *See Fujian*, 2004 WL 2645974 at *8. Here, the parties

6   expressly agreed to enforce the Personal Guaranties without an arbitration clause. Alongside the

7   absent arbitration provision, the parties executed the guaranties after the Dealer Agreements so

8   the parties were aware of the scope of obligations under the guaranties. It follows that the parties

9   did not intend to arbitrate the obligations contained therein and a stay pending the resolution of

10  arbitrable claims under the Dealer Agreements is proper. Under similar circumstances, courts

11  have declined to compel arbitration in favor of a stay. *See id.*

12        A district court retains the inherent power to stay litigation "to control the disposition of

13  the cases on its docket with economy of time and effort for itself, for counsel, and for the

14  litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). In exercising this power, the

15  court must balance the hardship and inequity of allowing the action to proceed with "the

16  ossification of rights which attends inordinate delay." *Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir.

17  2000). In accordance with the FAA policy of staying any litigation that contravenes enforceable

18  arbitration agreements, "if a suit against a nonsignatory is based upon the same operative facts

19  and is inherently inseparable from the claims against a signatory, the trial court has discretion to

20  grant a stay if the suit would undermine the arbitration proceedings and thwart the federal policy

21  in favor of arbitration." *Amisil Holdings*, 622 F.Supp.2d at 842 (quoting *Hill v. GE Power Sys.,*

22  *Inc.*, 282 F.3d 343, 347 (5th Cir. 2002)). Here, the determination of Defendants' liabilities, if

23  any, rest on the outcome of the arbitration proceedings. For considerations of judicial economy

24

and efficiency, a stay is appropriate. Defendants' motion to dismiss and compel arbitration is hereby DENIED and the motion to stay pending arbitration is GRANTED. The parties are directed to inform the Court on the status and outcome of the arbitration proceeding upon issuance of the ruling or no later than six (6) months of this order, whichever is sooner.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendants' Motion to Dismiss and Compel Arbitration (Dkt. # 9) is DENIED.

(2) Defendants' Motion to Stay Pending Arbitration (Dkt. # 9) is GRANTED.

(3) The Clerk is directed to forward a copy of this Order to plaintiffs and to all counsel of record.

Dated December 11, 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE